## Evelyn ETHRIDGE *v.* STATE of Arkansas

CA CR 82-197                                          654 S.W.2d 595

Court of Appeals of Arkansas
Opinion delivered July 6, 1983
[Rehearing denied August 24, 1983.]

*Blevins, Pierce & Stanley,* by: *Robert E. Marston,* for appellant.

*Steve Clark,* Atty. Gen., by: *Velda P. West,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. Appellant Evelyn Ethridge appeals her conviction of manslaughter and urges eight points for reversal. We find reversible error as to one and discuss the others only to the extent we think necessary in view of a new trial.

In April of 1982 a tornado had touched down near the City of Conway and the police had set up a roadblock to control traffic going in and out of the area. A vehicle driven by appellant came over the crest of a hill some 1400 feet from where a police officer was standing in appellant's lane talking to the driver of a vehicle headed toward appellant, but which had been stopped at the officer's signal. It was after dark, the lights of the other vehicle were shining toward appellant, and appellant's vehicle struck the policeman as he stepped out from behind the front door of the other vehicle and signaled the appellant to stop.

Appellant never applied her brakes before the officer was hit; her male companion was intoxicated; and her blood-alcohol test registered .15%, although a man helping the police control traffic testified that shortly after the accident he did not notice anything unusual about her behavior or demeanor.

One of the points relied upon by appellant concerns the giving of an instruction based upon the presumptions set

out in Ark. Stat. Ann. § 75-1031.1 (Repl. 1979). That instruction, No. 9, was as follows:

## COURT'S INSTRUCTION NO. 9

You are instructed that the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance shall give rise to the following presumptions:

Number one, if there was at the time point 0-five percent present or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor.

If there was at the time in excess of point 0-five percent but less than point one-0 percent by weight of alcohol in the defendant's blood, such fact shall give rise to — shall not give rise to any presumption that the defendant was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

Number three, if there was at the time point one-0 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

The foregoing provisions shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor.

This instruction was objected to by appellant on the specific grounds that it was not in the Arkansas model criminal instruction book (AMCI). Appellant offered an instruction incorporating AMCI 205 to be given in lieu of the court's instruction No. 9, but the court refused that request and gave both instructions to which appellant

objected. Appellant's requested instruction was given as the court's instruction No. 10, and reads as follows:

> Evidence of drinking may be considered by you along with all the other evidence in the case in determining whether Mrs. Ethridge was reckless or negligent, but that evidence alone does not impose upon you the duty of finding guilt as to manslaughter or negligent homicide.

We think the court erred. The note on use which appears in the AMCI book under 205 clearly states that instruction should be used when the evidence raises a statutory presumption *other* than the shoplifting presumption. And the comment which follows the note on use states: "It is improper for the judge to tell the jury that a specific fact in evidence is sufficient to support a specified inference or presumption of fact." Certainly that it what the court's instruction No. 9 did.

The state argues that *Jones* v. *City of Forrest City*, 239 Ark. 211, 388 S.W.2d 386 (1965), supports the trial court's action, but *French* v. *State*, 256 Ark. 298, 506 S.W.2d 820 (1974), cited under AMCI 205, holds otherwise. In *French* the court said the vice in an instruction which tells the jury that a specific fact shown by the evidence is sufficient to support a certain inference is that this amounts to a comment on the evidence which is prohibited by Art. 7, Sec. 23 of the Constitution of Arkansas. In reference to the *Jones* v. *Forrest City* case, the court said:

> [W]e reject appellee's argument based upon a statement in *Jones* v. *City of Forrest City*, 239 Ark. 211, 388 S.W.2d 386 (and cases cited therein), that an instruction in the language of a statute applicable to the facts of a case is *always* proper. This comprehensive language applied literally would permit the legislature to override Art. 7, Sec. 23 of the Constitution, but we have held in *Reno*, decided subsequently to *Jones*, that this cannot be. 256 Ark. at 300.

Since this case must be reversed and remanded for a new trial because of the error above discussed, we also discuss the

appellant's contention that it was improper to allow the state's expert to give his opinion on an ultimate fact in issue.

The state called Steve Jackson of the state police who testified as an expert in accident investigation and reconstruction. He said he had been asked to do a reconstruction in this case and he read six questions which he had been asked to answer. After explaining how he arrived at his answers, he read the questions again and gave his answers.

The first question asked what minimum speed the vehicle was traveling at impact, and the trooper's answer was 42 miles per hour.

The second question asked what visibility was possible at the time of the accident, and the officer's answer was 1420 feet.

The third question asked what was the maximum visibility under the circumstances, and the answer was 1420 feet.

The fourth question asked if the driver of the striking vehicle should have been able to see the pedestrian's position, and the expert's answer was "only at the point where the flashlight is used."

The fifth question asked if the driver of the striking vehicle had time to take evasive action if traveling at the speed limit, and the answer was yes.

And the last question was, "had driver been alert and practicing reasonable safety, could this death have been prevented?" The state trooper's answer was, "In my opinion it could have."

Now the question for the jury to decide in this case was whether the appellant recklessly caused the death of the policeman, and the law provides that one acts recklessly when there is a gross deviation from the standard of care that a reasonable person would observe in the same situation. Ark. Stat. Ann. §§ 41-1504 and 41-203 (Repl. 1977). We think

this is essentially the same question the state trooper answered. When he said the policeman's death could have been avoided if the appellant had been alert and practicing reasonable safety, he answered the question the jury had to answer — did appellant cause the policeman's death by a gross deviation from the standard of care that a reasonable person would observe in the same situation.

The state asserts, however, that our Uniform Evidence Rule 704 allows an expert to give an opinion on an ultimate fact issue. However, that is not really what the rule provides. The rule states that testimony in the form of an opinion *otherwise admissible* is not objectionable because it embraces an ultimate issue. Our rule 704 is the same as the federal evidence rule 704. The advisory committee's note to that rule states, in part, "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions . . . opinions must be helpful to the trier of fact . . . . " 28 U.S.C.A. Rule 704 (West 1975).

An 8th Circuit case, *United States* v. *Scavo*, 593 F.2d 837 (8th Cir. 1979), states:

> Rule 704 does not, of course, render all expert testimony admissible. Expert testimony must still meet the criterion of helpfulness expressed in Rule 702 and is also subject to exclusion under Rule 403 if its probative value is substantially outweighed by the risks of unfair prejudice, confusion or waste of time.

Here are some cases which have held that an opinion involving an ultimate issue was not admissible even though rule 704 or its equivalent was in effect.

*Marx & Co., Inc.* v. *Diner's Club, Inc.*, 550 F.2d 505 (2nd Cir. 1977), where the expert gave his opinion on the "reasonable" time required for an SEC registration statement to become effective. This was based upon the statistic median time required. The court said the issue for the jury to determine was whether the party's conduct was reasonable under the circumstances in which it found itself and held that the opinion given was "prejudicial overweight."

*United States* v. *Pino,* 606 F.2d 908 (10th Cir. 1979), where the defendant was charged with killing a person in Indian country by driving without due care and circumspection, and the court agreed that psychiatric testimony was not admissible to show that, because of the defendant's personality, three alcoholic drinks would not cause him to drive in a reckless and incautious manner. The appellate court said the expert was not free to "substitute his judgment" as to the defendant's state of mind and in a footnote said it was mindful of Rule 704, but "we do not feel, however, that the rule means that the witness may simply say that the defendant would not, or did not, drive recklessly."

*Shell Oil Co.* v. *Gutierrez,* 581 P.2d 271, 279 (Ariz. Ct. App. 1978), where it was held that the trial court did not err in excluding expert testimony as to whether the "FLAM-MABLE LIQUID" label was adequate. The appellate court said, "Expert opinions will be rejected where the facts can be intelligently described to and understood by the jurors so that they can form reasonable opinions for themselves." It is interesting to note that the Arizona rule that expert opinion will not be excluded merely because it deals with ultimate facts, was established by case decision. *Allied Van Lines* v. *Parsons,* 293 P.2d 430, 433 (Ariz. 1956).

*Gallagher* v. *Parshall,* 296 N.W.2d 132, 134 (Mich. Ct. App. 1980), where the court said:

> As to the trial court's exclusion of the opinion testimony of Dr. Devlin regarding whether plaintiff's stiff neck constituted serious impairment, we are fully in accord therewith. Given the detailed testimony regarding the diagnosis of the injuries and the doctor's explication of the medical terms utilized in such diagnosis, we again conclude that the jurors were capable of reaching their own conclusion thereon unaided by any expert's opinion on the matter.

And finally, the Arkansas Supreme Court case of *Gramling* v. *Jennings,* 274 Ark. 346, 625 S.W.2d 463 (1981), where the court reversed because a doctor was allowed to say that, in his opinion, another doctor was not negligent when

he severed the plaintiff's ureter. The court said, "it is difficult to draw a line between opinion testimony that merely embraces the ultimate issue and opinion testimony that tells the jury which result to reach," but observed, "in this case it is a bald statement of an opinion as to the ultimate issue."

In the instant case the state also argues that appellant failed to object properly to the ultimate-issue question. Since we have reversed on another point, it would serve no purpose to address the state's contention as to lack of proper objection. In view of another trial, however, we note, assuming a proper objection, the sixth question and answer of the state's expert witness are not admissible under evidence rule 702 as they are not helpful to the jury's determination of a fact in issue — that is, given the same information used by the expert, the jury could answer the sixth question as well as he could, and it is the jury's duty to determine the standard of care of a reasonable person, not the duty of an expert; also, under evidence rule 403 the probative value of the sixth question and answer given in evidence by a member of the Arkansas State Police is substantially outweighed by the danger of unfair prejudice.

As to the other points argued by appellant, one contention is that some potential jurors were summarily excused, without further inquiry, when they responded affirmatively to the court's questions of whether they were personally acquainted with appellant or her family, and others were so excused when they stated they had secondhand knowledge relating to the facts and circumstances of the case. Appellant does not contend that her voir dire examination of these prospective jurors was restricted as in *Fauna* v. *State*, 265 Ark. 934, 582 S.W.2d 18 (1979), and since a party is not entitled to have any particular juror, in the absence of a showing that a biased or incompetent juror was thrust upon appellant, we find no error on that point.

Also, we find no error in the introduction into evidence of the flashlight the deceased officer was using. Appellant argues that the chain of possession was broken and that the batteries may have been changed, but all that appears in the

evidence is that the flashlight had been held by the policeman's family for a short while on the night of the occurrence. In establishing a chain of custody prior to introduction of evidence, it is not necessary to eliminate every conceivable possibility that the evidence has been tampered with; it is only necessary that the trial judge be satisfied that the evidence is genuine and, with reasonable probability, that it has not been tampered with. *Davis* v. *State,* 275 Ark. 264, 630 S.W.2d 1 (1982). Here, the flashlight was relevant on the issue of whether its light should have been seen by the appellant; there was evidence that the batteries were rechargeable and had to be replaced only once a year; and the break in custody and the strength of the batteries were matters going to the weight of the evidence, not its admissibility. *Gardner* v. *State,* 263 Ark. 739, 569 S.W.2d 74 (1978).

Another point raised by appellant is that the court erred in limiting her closing argument to twenty minutes. While there may be disagreement as to when it has been abused, it is clear that the length of the jury arguments must be left to the sound discretion of the trial judge. *Kelley* v. *State,* 7 Ark. App. 130, 644 S.W.2d 638 (1983). We cannot say that the twenty-minute limitation was an abuse of discretion in this case.

The appellant's contention that the prosecuting attorney's jury argument exceeded the bounds of fair comment is answered by the proposition that this is also a matter in which the trial court has broad discretion. *Price* v. *State,* 268 Ark. 535, 597 S.W.2d 598 (1980). We do not, however, mean to imply a diminution of the authority of *Simmons* v. *State,* 233 Ark. 616, 346 S.W.2d 197 (1961), cited by appellant, and, of course, this is also an issue that must be determined on a case-by-case basis.

We think there is no need to discuss appellant's final contention that the verdict was not supported by substantial evidence. Suffice it to say, the judgment is reversed and remanded for a new trial because of the error in giving the jury the court's instruction No. 9.

Reversed and remanded.