Richard P. JACKSON *v.* Nora PITTS

CA 05-463                                        220 S.W.3d 265

Court of Appeals of Arkansas
Opinion delivered December 14, 2005

*Richard Young*, for appellant.

*Len W. Bradley*, for appellee.

KAREN R. BAKER, Judge. Appellant Richard Jackson owns land in Johnson County with a southern boundary line that adjoins the northern boundary line of appellee Nora Pitts. The appellee filed a complaint against the appellant, claiming he, or

persons acting on his behalf, bulldozed valuable trees on her land where it borders that of the appellant. Following a bench trial, the Johnson County Circuit Court found that the appellant and co-defendant John Moore trespassed on land belonging to the appellee and destroyed marketable timber. The circuit court entered judgment for damages against the appellant and his co-defendant, jointly and severally, and assessed the value of the destroyed timber at $1,157.20. Treble damages allowed under Ark. Code. Ann. § 18-60-102 (Repl. 2003) were awarded for a total judgment of $3,471.60. Appellant Jackson raises two points on appeal: 1) the evidence was not sufficient to support the judgment; 2) the court erred in crediting the testimony of Johnson County Extension Agent Blair Griffin. We disagree and affirm.

Arkansas Code Annotated section 18-60-102(a)(1) provides that a person committing trespass shall treble the value of trees damaged, broken, destroyed, or carried away. The imposition of treble damages pursuant to Ark. Code Ann. § 18-60-102(a) re-quires a showing of intentional wrongdoing, though such intent may be inferred from the carelessness, recklessness, or negligence of the offending party. *See, Hackleton v. Larkan*, 326 Ark. 649, 933 S.W.2d 380 (1996); *Auger Timber Co. v. Jiles*, 75 Ark. App. 179, 56 S.W.3d 386 (2001). The trial judge in this case applied the fair market value of the timber as the measure of damages, not the difference in before-and-after value of the land, although the use of either method has been approved. *Stoner v. Houston*, 265 Ark. 928, 582 S.W.2d 28 (1979); *Laser v. Jones*, 116 Ark. 206, 172 S.W. 1024 (1915); *Auger, supra*. The evidence in each case determines what measure of damages is to be used. *See ; White River Rural Water Dist. v. Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992); Linebarger v. Owenby, 79 Ark. App. 61, 83 S.W.3d 435 (2002). Timber is generally valued according to its "stumpage value," which is the value of the timber standing in the tree. *Burbridge v. Bradley Lumber Co.*, 218 Ark. 897, 239 S.W.2d 285 (1951).[1]

The appellant's first point on appeal maintains that there was insufficient evidence to support the judgment against him, arguing that there was no allegation in the complaint concerning an employment or agency relationship that would impute liability for

---

[1] For a detailed discussion on the development of the application of stumpage values as a measurement of damages in Arkansas caselaw, *see Burbridge, supra.*

the damaged timber.[2] According to the appellant, it was never shown at trial that his employee and co-defendant John Moore was acting within the scope of his employment or acting as the appellant's agent when the alleged trespass and destruction of timber occurred. We disagree.

In bench trials, the standard of review on appeal is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Neal, supra.* This court views the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000). Disputed facts and determinations of the credibility of witnesses are within the province of the fact finder. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

The appellee's son, Lloyd Pitts, testified at trial that he witnessed John Moore operating a bulldozer in the area of the destroyed timber, which was located on Pitts's property where the appellant's property adjoins hers.[3] Lloyd Pitts stated that he walked along his mother's land shortly afterward and observed that there were holes where trees had been removed from the bulldozed ground. Gerald Johnson, the appellee's son-in-law, also testified he witnessed the bulldozer activity on the appellee's property and that the bulldozer operator told him that he had been directed by the appellant to perform the work.

John Moore testified that he was employed by the appellant and that he was directed by the appellant to perform bulldozing work in the area adjoining the appellee's property. Moore further

---

[2] The appellant did not make a specific motion for a directed verdict at trial. However, the Arkansas Rules of Civil Procedure do not require such motions to challenge the sufficiency of the evidence when there has been a bench trial. *See* Ark. R. Civ. P. 50(e) (2005); *Firstbank of Ark. v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993).

[3] This area also includes a utility easement held by Arkansas Valley Electric Company covering the northernmost section of appellee Pitts's property for its full length.

stated that, in the process of clearing land and erecting and relocating a fence for the appellant, he removed trees, brush, and vegetation in the easement area along the appellee's land.

The appellant himself testified that he hired John Moore and his brother, Denver Moore, to perform work on his property involving the use of a bulldozer and a trackhoe. The appellant stated that he instructed Mr. Moore and his brother to erect a fence on the appellee's property in what he described as an effort to "induce" her to move a fence in another location that he believed was improperly placed. The appellant stated that he knew that the fence he instructed Mr. Moore and his brother to construct was not on his property. The appellant also testified that if any trees had been removed in the easement area located on the appellee's property that it "would have been done by Mr. Moore and his brother who were working for me."

The testimony of the parties in this case clearly shows a relationship between appellant Jackson and Moore sufficient to establish liability for trespass and destruction of timber by a preponderance of the evidence.

For his second point on appeal, the appellant contends that the trial court abused its discretion in crediting the testimony of Blair Griffin — University of Arkansas Extension Agent for Johnson County. The appellant asserts that the circuit court erred in giving weight to Mr. Griffin's expert opinion of the estimated number of trees destroyed by the appellant and their market value at the time because it was "based upon a hypothetical when the basis for the hypothetical was not in evidence." We find no merit in this argument.

Arkansas Rule of Evidence 702 provides that if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify to the matter in the form of an opinion or otherwise. *See Mearns v. Mearns*, 58 Ark. App. 42, 946 S.W.2d 188 (1997). Determination of the credibility of a witness is within the province of the factfinder. *Neal, supra.* Whether a witness may give expert testimony rests largely within the discretion of the trial judge. *Williams v. Ingram,* 320 Ark. 615, 899 S.W.2d 454 (1995). A trial judge's decision regarding admissibility will not be reversed absent an abuse of discretion. *Id.* On appeal, the burdensome task of dem-

onstrating that the trial judge has abused his discretion is on the appellant. *Id.* Recognition must be given to the trial judge's superior opportunity to determine the credibility of the witnesses and the weight to be given to their testimony. *Gosnell v. Indep. Serv. Fin., Inc.,* 28 Ark. App. 334, 774 S.W.2d 430 (1989). A circuit court, however, is required to make a preliminary assessment of whether the reasoning or methodology underlying expert testimony is valid and whether the reasoning and methodology used by the expert has been properly applied to the facts in the case. *Coca-Cola Bottling Co. of Memphis, Tenn. v. Gill,* 352 Ark. 240, 100 S.W.3d 715 (2003).

The appellant did not object to Mr. Griffin's qualification as an expert. At trial, the appellant's objection was initially based on an assertion that Mr. Griffin's expert opinion relied, at least in part, on hearsay. According to Ark. R. Evid. 703, an expert may base an opinion on facts or data otherwise inadmissible, as long as the facts or data are of the type reasonably relied on by experts in that particular field. Rule 703 allows an expert witness to form an opinion based on facts learned from others despite it being hearsay. *Carter v. St. Vincent Infirmary,* 15 Ark. App. 169, 690 S.W.2d 741 (1985); *Ark. State Hwy. Comm'n v. Schell,* 13 Ark. App. 293, 683 S.W.2d 618 (1985). The issue raised by the appellant at trial and in his brief concerning credibility and validity is therefore determined by examining Mr. Griffin's testimony concerning the quantity and value of the trees the court determined were destroyed by the appellant.

Shannon Hignite, granddaughter of the appellee, contacted Mr. Griffin in his capacity as the county extension agent and requested information about finding an individual to assess the damage done to the trees. Mr. Griffin told Ms. Hignite that he could perform the service, and Ms. Hignite directed him to the site where the trees were allegedly bulldozed, and showed him the location of the property line and utility easement. Mr. Griffin followed testimony concerning his experience in valuing timber by describing the methodology he uses to compute timber value within a specified area. This methodology includes use of a measurement device called a Biltmore stick, diameter measurements of randomly-selected trees, and graph that provide an estimate of the timber volume. The estimated timber volume is then multipled by the density, or number of trees, within a specified area for the merchantable value of the trees. The esti-

mated market value is then determined through use of the Timber Market Report compiled by the University of Georgia.[4]

Mr. Griffin further testified on direct examination and cross-examination that he personally walked the area where the appellee claimed the trees were destroyed to conduct his measurements, performing what is known as a "timber cruise." Although Mr. Griffin initially stated that there are several ways to determine the density of a missing area of trees, and that he was not sure which method he used two years previously for his report, he subsequently testified he walked off the area that was bulldozed, and then went into the woods next to that area to measure a similar amount of land and counted the trees within it. This method was required because the stumps within the area cleared by the appellant had apparently been entirely removed. On cross-examination Mr. Griffin testified that he remembered that he was impressed by the uniform density of trees in the area while making his estimate.

Arkansas cases refer to the use of timber cruises to estimate timber value without offering detailed descriptions of the methodology employed. *See, e.g., Ark. La. Gas Co. v. Bennett*, 256 Ark. 663, 509 S.W.2d 811 (1974). While timber value was determined by what the court termed a "stump cruise" in *Dillard v. Wade*, 74 Ark. App. 38, 45 S.W.3d 848 (2001), in the present case the stumps were entirely removed by a bulldozer. In our judgment, the reasoning or methodology underlying Mr. Griffin's expert testimony was valid and was properly applied to the facts in the case. Therefore, the circuit court did not err in admitting the expert opinion, nor in granting it weight in making a determination of the value of the appellee's destroyed timber.

Affirmed.

CRABTREE and ROAF, JJ., agree.

---

[4] It is perhaps helpful to show the timber valuation process used here for the measurement of damages with an equation: Merchantable Value of Timber = Density (number of trees) x Volume. The merchantable value of the timber is then pegged to the fluctuating market value according to region, determined by such reports as the University of Georgia's Timber Market Report.