Peter DiPIRO, Plaintiff-Appellant,

v.

James L. TAFT, Mayor, City of Cranston, Earl Croft, Director of Personnel, City of Cranston, and Thomas Powers, Defendants-Appellees.

No. 78–1087.

United States Court of Appeals, First Circuit.

Argued June 7, 1978.

Decided Sept. 22, 1978.

As Amended Oct. 20, 1978.

Ralph J. Gonnella, Providence, R. I., for appellant.

Joseph A. Kelly, Providence, R. I., with whom Carroll, Kelly & Murphy, Providence, R. I., was on brief, for appellees.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant, Peter DiPiro appeals from a jury verdict finding that he was not impermissibly denied equal protection of the laws when the Mayor of the City of Cranston, Rhode Island, appointed William Maine rather than DiPiro to the position of fire chief. The complaint was brought pursuant to 42 U.S.C. § 1983. Parties defendant were the Mayor, the Director of Personnel, and a former Fire Chief of the City of Cranston.

The mayor of Cranston is given the authority in the City Charter to appoint the fire chief. When a vacancy is to be filled, the director of personnel is directed to announce and conduct a competitive examination and to certify to the mayor the names of the three persons standing highest on the list of eligible candidates, in the order of their standing. The mayor is then empowered to make his appointment from those three.

Appellant and William Maine tied for first place and were both certified as number one on the list of eligible candidates sent to Mayor Taft by Personnel Director Croft.[1] Taft appointed Maine. Appellant complains that Taft based his decision on political motives rather than merit and that he has, accordingly, been denied equal protection of the laws. On appeal, he asserts that the judge erroneously charged the jury on the applicable law and made several mistaken evidentiary rulings.

■ DiPiro complains that the court incorrectly relied on *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), in charging the jury. He claims that the court should not have informed the jury that, should it find the position of fire chief a policy making one, then the mayor would be permitted to take political affiliation into consideration in choosing from the top three candidates. The pertinent passage from *Elrod* reads:

A second interest advanced in support of patronage is the need for political loyalty of employees, . . . to the end that representative government not be undercut by tactics obstructing the implementation of policies of the . . . administration, policies presumably sanctioned by the electorate. The justification is not without force, but is nevertheless inadequate to validate patronage wholesale. *Limiting patronage dismissals to policy-making positions is sufficient to achieve this governmental end.*

*Id.* at 367, 96 S.Ct. at 2687 (emphasis added). Appellant claims that, since the position at issue is a civil service one which turns on merit, the *Elrod* allowance of patronage appointments to policy making positions is inapplicable. However, *Elrod* affords no constitutional basis for distinguish-

---

1. The competitive ranking included several factors. One was a written exam on which both DiPiro and Maine received exactly the same score. An oral examination, conducted by three fire chiefs from other cities and towns in Rhode Island, ranked DiPiro and Maine approximately equivalent. However, one of the fire chief examiners contacted Earl Croft, the Director of Personnel, the day following the exam to inform him that he had mistakenly ranked DiPiro twenty points higher than he had intended. He queried whether it would be possible to change his score. He was not permitted to, thereby leaving DiPiro with twenty points to which one of the examiners had determined he was not entitled. The fire chief examiner was not associated or related in any manner with the defendants in this case. Another factor used in determining rank was seniority, limited by the City Charter's directive that no additional seniority credit would accrue after fifteen years of service. DiPiro claims that he should have been ranked higher than Maine, though both had tied for first place, since he had more years in the department than Maine. Personnel director Croft explained that he had given both candidates the maximum allowable seniority credit and, since the City Charter limited further credit for more than fifteen years service, he did not factor DiPiro's additional years.

ing between civil service and non-civil service employment. It simply holds that the first amendment prohibits political considerations in the case of non-policy making employees, but not in the case of policy making employees. The challenged instruction was consistent with the law as the Supreme Court has stated it thus far.

■ Under the City Charter, the mayor was authorized to select among the top three candidates, which he did. His authority to make such a selection necessarily carried with it considerable discretion to pick and choose on the basis of his own judgment. Mayor Taft testified that the reason he appointed Maine rather than DiPiro was that he felt that DiPiro lacked the managerial skills necessary for effective management of the fire department. Taft also cited DiPiro's tendency to be a "good guy" rather than a strong leader as a reason for not naming him as fire chief. Taft testified that DiPiro was not the type of person qualified to administer a large department with a million dollar budget. He explained that DiPiro had gone counter to the policies of the mayor and the department on occasion, once testifying in behalf of retaining on the force a fireman who had been convicted of a narcotics offense and once differing on the promotion of a fireman. The mayor felt that appellant might not fully implement the policies of his administration. The retiring fire chief had told Mayor Taft that, in his opinion, Maine would make a better fire chief than DiPiro; Taft stated that he respected the retiring chief's opinion, and that it was an additional factor in his decision. Taft testified unequivocally that he appointed Maine because he was convinced that he would make the better fire chief, and disclaimed making the selection on the basis of a political motive.

■ There was no evidence which would warrant the finding of a purposeful and intentional discrimination against DiPiro sufficient to support a finding of unconstitutional deprivation of equal protection of the laws. *See Claudio Bauza v. Arturo Morales Carrion,* 578 F.2d 447, at 451–452

(1st Cir. 1978). The trial judge was more than solicitous toward plaintiff, giving a charge based on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to the effect that, should the jury find that defendant Taft considered impermissible factors in his promotional decision, the burden of proof would then shift to the defendant to show that he would have selected Maine irrespective of any political considerations. Since it is clear that appellant did not belong to any protected class, this jury instruction provided him more protection than he was legally entitled to.

■ It must also be noted that the *Elrod* ruling, within the context of this case, was more than was necessary to state the correct standard for evaluating defendant Taft's decision. Taft appointed Maine within the context of a competitive civil service examination setting. DiPiro's protected interest is not of the same calibre as that of plaintiffs' in *Elrod.* He had a protected interest in being allowed to compete for the position of fire chief. He was accorded this right. The mayor, as authorized by the City Charter, selected the final nominee from the top three certified candidates. The jury surely was entitled to find, on the basis of the evidence, that the decision to appoint Maine rather than DiPiro trampled no legally protected right of DiPiro and specifically did not abridge his guarantee to equal protection of the laws.

■ We have serious doubts as to whether this case warranted submission to a jury. The federal courts are not super personnel boards ordained to reevaluate appointments and dismissals made in the course of state and local government operations. Labelling a firing or hiring unconstitutional does not make it so. There was nothing unfair or even improper about the mayor of Cranston's appointment of its fire chief.

Upon review, we find no grounds for reversible error in the district court's evidentiary rulings.

*The judgment is affirmed.*